## Case No. 12,647.

### The SELMA.

[1 Lowell, 30;[1] 1 Am. Law Rev. 84.]

District Court, D. Massachusetts. Dec., 1865.

PRIZE—RIGHT TO SHARE—VESSEL WITHIN SIGNAL DISTANCE.

It is not sufficient, in order to entitle a vessel to share in the distribution of a prize, that it was within signal distance, and formed part of the force commanded by the officer who made the capture, if its situation was such that it could not have rendered any assistance in the actual conflict in which the prize was taken.

[Cited in Re Perry, Case No. 10,999.]

This case arose out of the memorable action of the 5th of August, 1864, in the Bay of Mobile. After the ships under the immediate command of Admiral Farragut had succeeded in passing Forts Morgan and Gaines, which guarded the main ship-channel into the bay, they had an obstinate engagement with the rebel iron-clad ram, the Tennessee, which resulted in her surrender; and soon after captured, with little or no trouble, the Selma and other vessels, which are the subject of this proceeding. The case of the Tennessee was sent to another court. Those of our vessels which were not adapted to passing the batteries, were stationed, some of them near the main channel, and others in Mississippi Sound, about twenty miles distant by water from that entrance, but much nearer the bay by way of Grant's Pass, had that passage been open; but it had been wholly obstructed for the time by barriers put there by the rebels. The duties of these divisions were to aid the troops in landing and besieging the forts, and to pursue any hostile vessels that might approach their stations from without or from within the bay; and the first division, besides, was to assist any of our ships that might fail to pass the batteries, and put back in distress. The question which arose upon this state of facts, was whether both or either of these divisions stationed outside the bay were entitled to share in the captures above mentioned.

LOWELL, District Judge. Upon this new and difficult question, I have thought proper, in the absence of full reports of most of the cases in our own courts upon analogous points, to seek for light, not only in such of them as have come to my knowledge, but also in the judgments of the prize courts in England, where questions of joint capture have been much considered.

By the English law, as applied to ordinary cases of prize, the term captors, or more strictly takers, includes not only those who actually make a prize, but also all who are associated in the taking. The association may be casual, as where several vessels happen to join in a chase, or to be in sight of a capture; or it may be more permanent, and imposed by superior command, as where several vessels are

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

engaged in a blockade or other enterprise in common. In the former case, there is by the English law a presumption of fact, that all king's ships in sight, during the chase or at the time of the capture, did by their presence encourage the friend and discourage the enemy; and that such was their intent. But, if it turn out that they could not have been seen by one or other of the belligerents, or that they had no intent to aid, but were engaged upon some duty or business inconsistent therewith, the presumptions are rebutted, and they cannot share. The Galen, 2 Dod. 24; The Rattlesnake, Id. 32; La Melanie, Id. 125; The Forsigheid, 3 C. Rob. Adm. 316; The Lord Middleton, 4 C. Rob. Adm. 153.

In the case of a common enterprise, duly authorized, it is only necessary to show, that the claiming vessel was one of the associates, and that the capture was made by another of them, and was within the purpose of the association; and, if these facts are shown, the actual position of the claiming vessel at the time of capture is unimportant. La Henriette, 2 Dod. 98; The Harmonie, 3 C. Rob. Adm. 318; The Guilliaume Tell, Edw. Adm. 6; The Naples Grant, 2 Dod. 286.

In both classes of cases, the association of vessels has been looked upon as a sort of commercial adventure or partnership, more or less permanent, to which each contributed such share of time and effort as chanced to fall to him to render, and in the gains of which each ought to have his equitable dividend. The doctrine is incidentally but well expressed by Lord Stowell in the phrase, that, in such cases, privity of purpose creates community of interest. The Dordrecht, 2 C. Rob. Adm. 64.

It has often been doubted by eminent English judges, whether by this construction the plain language of the statutes, giving prizes to the takers, had not been unwarrantably extended. And it is a singular fact, that the word takers, in another part of the acts, has received from the courts a totally different interpretation. The English prize acts have usually contained a provision for giving head-money, or a reward reckoned according to the number of persons on board the hostile vessel, to the takers of any ship of war. In cases arising under this part of the statutes, it is held that the object of the legislature was to encourage personal gallantry and exertion, and constructive captors are, as a general rule, excluded from sharing in this bounty; although, under the same statutes and concerning the same vessel, they may come in as takers of the prize itself. Accordingly, it has been decided that joining in a chase, or being in sight of a capture, raises no presumption of a joint taking, so far as head-money is concerned; but it is for the claiming vessel to show, that the surrender was in fact partly due to her presence or co-operation. L'Alerte, 6 C. Rob. Adm. 238; L'Hercule, Id., note; La Gloire, Edw. Adm. 280. And parliament afterwards ratified and adopted this distinction.

When our prize acts came under discussion in the course of the war, now happily ended, the courts with much uniformity gave to the word captors a meaning more nearly like that established in England for cases of head-money than that there followed in ordinary prize causes. This course of decision is ably vindicated by my eminent predecessor, in the case of The Cherokee [Case No. 2,640], in 1864. His opinion is founded upon the usual and obvious meaning of the language of the statutes, as well as upon their general purpose. And it may be added to the reasons given in that judgment, that the intent of our law clearly is to encourage personal gallantry, enterprise, and perseverance, whether applied to the capture of armed or of unarmed vessels. Thus the whole net proceeds of a prize are given to the captors, when she is of equal or superior force to the vessel or vessels making the capture, but only one-half where she is of inferior force. Again, the head-money which our law grants is larger, when the hostile force is equal or superior. But no head-money at all is given, excepting for hostile vessels of war sunk or destroyed; and, when due, it is to be distributed like prize-money: showing that the grant is intended as a substitute for the prize itself. St. 1864, c. 174, §§ 10, 11; 13 Stat. 300.

The principle of distribution, therefore, is not varied by any difference in the character of the prize; and our courts, as I have said, have adopted the narrower and more obvious of the constructions which the English tribunals have applied to the subject; and have held that neither a whole fleet, engaged in the closest association known to the English law, that of an authorized blockade, nor such parts of that fleet as may by orders, general or special (for such orders may always be presumed), give chase to a vessel violating the blockade, are entitled to be considered as constructive captors: but only those which fulfil the statute definition by being within signal distance of the actual captor at the time of the capture. That the government and the navy have acquiesced in this view is shown by their action in their several spheres of duty, and by the fact that no appeal has been taken from any of these decisions to the supreme court. And, since these judgments were promulgated, congress has amended the law in other particulars, and has restricted rather than enlarged the class of constructive captors by adding to the former requirement—that the vessels claiming as such captors should be within signal distance —the further qualification that they should be "under circumstances, and in such condition, as to be able to render effective aid if required." St. 1864, c. 174, § 10. It may therefore be taken as the policy of our government, in all its departments, to construe these statutes in the general sense above indicated.

In the present case, it is in proof that all the vessels were within signal distance of all the others. But the vessels outside the bay were not so situated as to give effective aid

in the naval engagement, which took place wholly within, because they could not pass the forts and other obstructions which guarded the channels. The case, therefore, stands upon the same footing as it would had the capture been made out of the sight of these vessels. And the question is, whether the association was such between all the vessels, that those now claiming can be considered actual captors. And I am of opinion that they are not to be so held.

I am far from saying, that, in a general naval combat, the part which each vessel takes is to be scrutinized by the court, and particular rewards to be meted out, where the overwhelming presumption is, and always must be, that all have done the duty assigned them; not even if that duty should happen to be only to stand and wait. But in this case, upon a careful examination of the candid and wholly impartial testimony of the distinguished commander of the fleet, I am not satisfied that the disposition made of the vessels, which were stationed outside the bay, was made with a view to the naval engagement. It seems rather to have been forced upon him by the fact that they could not take part in that engagement.

In the only American case which I have seen reported that touches this question, Judge Sprague decided that a vessel within sight and easy signal distance of the combatants, and ready and willing to afford aid to her own side, was not to be counted as one of the actual takers, in estimating whether the force was superior or inferior, if she was under orders not to join in the action without a special signal to that effect; though she was held entitled to share in the prize-money. The Atlanta [Case No. 619].

Suppose it had happened in the case now before me, as once occurred on the Mississippi under the same great captain, that only a small number of vessels had made good the passage of the forts; and that they had found themselves only equal or inferior in force to the enemy within, and had then succeeded by their skill and gallantry in making this capture. It would be impossible, I think, under the case of The Atlanta [supra], or on principle, to hold that the vessels outside were actual takers, and to reduce the credit and reward of the conquerors to the level of a capture by superior force. And it will not be easy under our law to define actual captors in such a way as not to require of them at least the qualifications of position and power to do service which the statute peremptorily imposes on constructive takers.

So far for the naval contest. But it is said that the claiming vessels performed important service, in conjunction with the army, in the capture of the forts; and that without this capture the prizes might never have been brought off in safety. This service was highly important, especially in its effect on the general fortunes of the campaign; but it is too remote to entitle the vessels or the army to be considered as actual takers of these prizes. Whether they could have been brought off or not, it is now impossible to say, though it may be inferred with some probability, that, being iron-clad, our fleet, which fully commanded the bay, could have run them out at some convenient season, or could have held them even to the end of the war. The naval capture, however, which was in no sense a surrender to conjoint forces, must stand upon its own merits, and be considered to have been complete when the last flag was struck; and subsequent aid, not directly in the nature of a salvage service, cannot confer a title by relation which did not arise out of the facts of the original taking.

The decree will therefore be for those vessels only that passed the forts. The case of The Tecumseh [3 W. Rob. Adm. 146], creates no difficulty, because she was destroyed by a torpedo while gallantly leading the way towards the enemy's vessels, and after having successfully passed the direct line of the land batteries.

I have considered this question with the more care, and arrived at its solution with the greater diffidence, because it is opposed to that of my friend the learned judge of the district court of the United States for Louisiana, by whom the proceeds of the ram Tennessee were distributed to the whole fleet. I have some reason to suppose that his decision, which has not been reported, was founded upon the apparent and attractive equity upon which the English cases of associated action have been put. But, while acknowledging the force of this consideration, I am constrained to believe that the stricter construction which I have given to the statute is more consistent with its language and intent, as well as with the judgments heretofore rendered upon it.

Neither class of captors was represented by counsel in the case before me; but I have had the benefit of a full and impartial statement of the facts, and analysis of the law, by the learned district attorney (Hon. R. H. Dana, Jr.), whose position and tastes have led him to give the subject of prize much thought and study.